## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

### CIVIL ACTION No. 3:08-CV-367

| | |
|---|---|
| **HIGH VOLTAGE BEVERAGES, LLC,** | |
| **Plaintiff,** | |
| **v.** | |
| **THE COCA-COLA COMPANY,** | |
| **Defendant.** | |

### COMPLAINT FOR PERMANENT INJUNCTION AND DAMAGES

Plaintiff High Voltage Beverages, LLC ("HVB"), by and through its undersigned counsel, for its Complaint against The Coca-Cola Company ("Coke"), alleges and states as follows:

### NATURE OF THE ACTION

1.      This is an action for trademark infringement in violation of the Lanham Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.*, and arises out of Coke's use of the trademark VAULT in violation of HVB's rights in its federally registered trademark VOLT for electrolyte replacement soft drinks.

2.      HVB and Coke are both in the business of marketing and distributing beverages. As set forth more fully below, Coke has violated HVB's intellectual property rights by unlawfully adopting and using a trademark, VAULT, which is confusingly similar to HVB's VOLT mark for use in connection with highly similar beverage products. Upon information and belief, Coke has continued to engage in its illegal behavior despite having actual and/or constructive notice of HVB's superior right to use the trademark in connection with such goods.

3.      Because the parties' beverage products are highly similar and compete in similar and/or identical markets, consumers are actually and/or highly likely to be confused and misled into believing that the parties and/or their products are the same or are authorized, sponsored, approved, or associated with each other in some way, all in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

4.      HVB seeks an injunction to restrain Coke's infringement of its VOLT Mark, Coke's profits flowing from its infringing activities, HVB's actual damages, costs, and attorneys' fees as authorized by the Lanham Act.

## PARTIES

5.      Plaintiff HVB is a limited liability company duly organized and existing under the laws of the State of Delaware and having its principal place of business in this judicial district. HVB owns by assignment from its predecessor-in-interest, Brand Name Management, Inc. ("BNM"), the federally registered VOLT trademark and attendant goodwill. HVB, through its predecessor BNM, has marketed and sold beverages under the VOLT trademark in this State and judicial district.

6.      Defendant Coke is a corporation duly organized and existing under the laws of the State of Delaware having its principal place of business in Atlanta, Georgia. Coke manufactures, markets and distributes soft drinks, sports drinks, and carbonated beverages. Coke does substantial business in the State of North Carolina and this judicial district, in that it advertises, offers for sale, and sells the infringing products complained of herein in the State of North Carolina and this judicial district.

2

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over the claims in this case pursuant to 28 U.S.C. §§ 1331 and 1338, in that they arise under Section 32 of the Lanham Act, 15 U.S.C. §§ 1114.

8.     This Court has personal jurisdiction over Coke, because, among other things, Coke sells its VAULT product and conducts business in the State of North Carolina and because the willful and infringing actions alleged herein are taking place, among other places, in North Carolina.

9.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) because, *inter alia,* the facts giving rise to the acts or omissions alleged herein, including Coke's acts of infringement and other wrongful conduct, took place at least in part in this District, and Coke also regularly does business in this judicial district and actively advertises and seeks business from customers in this district, including in connection with its infringing VAULT beverage.

## BACKGROUND FACTS

### *The Initial Conception and Selection of the VOLT Brand*

10.     HVB is now and has been, including through the activities of its predecessor-in-interest BNM, engaged in the development, manufacture, distribution and marketing in interstate commerce of carbonated and non-carbonated beverage products under the trademark VOLT.

11.     Beginning in or about the mid 1990s, BNM's founder, Owen Ryan, conceived of a new line of beverages to compete against popular caffeinated sodas and electrolyte enhanced thirst-quenching beverages, such as MOUNTAIN DEW and GATORADE.

3

12.     Ryan had previously created other beverage brands that are marketed today, such as CRAYONS® fruit juice drinks, and had experience in the advertising, marketing and development of beverage products from his prior work in the advertising industry.

13.     Historically, very few soft drinks or other beverages had successfully competed against products such as MOUNTAIN DEW or GATORADE, and it was Ryan's ambition to create such a competitive brand of beverages.

14.     Ryan selected the inherently distinctive trademark VOLT (the "VOLT Mark") as the trademark to designate this newly conceived line of carbonated and non-carbonated beverages.

15.     Ryan commenced the development and implementation of the new VOLT Mark and brand through BNM, a company he had previously founded to manage various of his marketing projects and branding initiatives.

### *HVB's Federal Registration for VOLT and Marketing and Distribution of the VOLT Branded Beverages*

16.     In furtherance of Ryan's vision for a new competitive and innovative brand of beverages, on July 23, 1997, BNM filed intent-to-use Application Serial No. 75/329,080 ("the VOLT Application") in the United States Patent and Trademark Office (the "USPTO") to register the VOLT Mark in International Class 32 for "electrolyte replacement soft drinks."

17.     Following the filing of the VOLT Application BNM and Ryan expended substantial time, effort, and monies in connection with clearing obstacles to registration and use of the VOLT Mark and beginning development of the VOLT brand.

18.     The VOLT Application and Mark faced certain legal hurdles.  In its initial examination of the VOLT Application, the USPTO cited as a bar to registration a third party

4

application (and later registration) for BIO VOLT INSTANT ENERGY for "non-alcoholic beverages, namely, caffeinated soft drinks and caffeinated drinking water and isotonic energy drinks, all produced without chemical flavor or coloring matter" in International Class 32, Reg. No. 2,254,829. The USPTO subsequently suspended action on the VOLT Application pending disposition of this third party application.

19.    After the BIO VOLT INSTANT ENERGY mark matured into a registration, BNM petitioned to cancel that registration for non-use to permit the VOLT Application to proceed to publication by the USPTO.   The BIO VOLT INSTANT ENERGY registration was ultimately cancelled in April of 2004.

20.    After the VOLT Application was allowed by the USPTO in 2005, BNM opposed Hormel Foods, LLC's Application Serial No. 78/608,124 to register the term VOLTZ for "energy drink mixes" in International Class 32.  Hormel abandoned its application in the Spring of 2007.

21.    In addition to these enforcement and clearance efforts undertaken to ensure BNM's rights in the VOLT Mark, BNM and Ryan also sought to develop the VOLT Mark and brand.  Thus, for instance, Ryan commenced work on the creation of appropriate labeling and business plans and market entry strategies for the VOLT brand and solicited consumer and retailer commentary on prototypes of the new brand in the years following the filing of the VOLT Application.

22.    BNM and Ryan, with the advice and assistance of outside consultants, developed formulations of the VOLT beverage in both its carbonated and non-carbonated forms.

23.    In October 2005, BNM obtained rights to use the domain name www.drinkvolt.com for purposes of establishing a promotional website to advertise and promote

the VOLT product. The associated website promoted VOLT as an exciting new alternative to popular competing brands.

24. The VOLT Application was published in the USPTO without opposition from any third party, and the PTO allowed the VOLT Application in 2005. BNM took initial extensions of time to file its Statement of Use necessary to perfect the application pursuant to 15 U.S.C. § 1051(d).

25. Having assured its unimpeded rights to use the mark in connection with the applied-for beverages, BNM stepped-up efforts to develop the brand via increased focus on consumer testing and research, product development, and market planning.

26. In or about October of 2006, BNM made its first sales and distributions of VOLT beverages in interstate commerce.

27. Based upon these initial sales, pursuant to 15 U.S.C. § 1051(d), in November of 2006, BNM filed its Statement of Use attesting to use of the mark in commerce. The VOLT Application thereafter matured into U.S. Registration No. 3,230,068 on April 17, 2007 (the "VOLT Registration").

28. Following issuance of the VOLT Registration, BNM continued the development, marketing, distribution and sale of VOLT branded beverages. During 2007 and continuing in 2008, VOLT beverages have been sold in various geographic markets, including North Carolina, South Carolina, Florida, New York, Illinois, and Ohio.

29. BNM has sold these products both via independent beverage distributors, who in turn provided VOLT to retailers, and also directly to retailers. In 2008, VOLT has been sold in over 100 Walgreen's stores in Florida.

6

30.     In 2007, VOLT was named the official sports drink of the American Amateur Athletic Union ("AAU") in North Carolina, and was sold in concession stands at AAU events.

31.     On August 1, 2008, the VOLT Registration and the VOLT mark, along with its attendant goodwill as well as the assets of the VOLT brand, were validly assigned to HVB as BNM's successor-in-interest.  That assignment has been properly recorded in the USPTO.  HVB is now responsible for the management and marketing of the VOLT brand.

32.     The VOLT registration is valid, subsisting and constitutes *prima facie* evidence of the validity of the VOLT Mark and VOLT Registration, HVB's ownership of the VOLT Mark, and HVB's exclusive right to use the mark in commerce on or in connection with the goods covered by the VOLT Registration.

33.     Pursuant to 15 U.S.C. § 1057(c), HVB enjoys a constructive first use and priority date as of the date of the filing of the VOLT intent-to-use Application on July 23, 1997.

### *Coke's Adoption of its VAULT Marks and Infringement of HVB's VOLT Mark*

34.     Coke and its bottler affiliates comprise among the largest sellers of soft drinks in the United States and the world.

35.     For many years, Coke has been attempting to compete with PepsiCo's extremely popular caffeinated soft drink, MOUNTAIN DEW. Coke has previously introduced two attempted competitors in this market under the trademarks MELLO YELLO and SURGE.

36.     Upon information and belief, sometime in or about 2004, Coke determined to adopt a third brand to enter into and compete in the market for highly-caffeinated carbonated soft drinks and selected the mark VAULT to designate that new brand.

37.     On December 17, 2004, March 28, 2005, and March 31, 2005, respectively, Coke filed in the USPTO intent-to-use applications to register the mark VAULT in International Class

7

32 for "non-alcoholic beverages, namely soft drinks; syrups and concentrates for making soft drinks" (Application Serial No. 78/534,888); VAULT for "energy drinks" (Application Serial No. 78/595,891); and V VAULT and Design for "non-alcoholic beverages, namely soft drinks and energy beverages; syrups and concentrates for making soft drinks and energy beverages" (Application Serial No. 78/599,327) (collectively, the "VAULT Marks" and the "Coke VAULT Applications").

38.     HVB is opposing the Coke VAULT Applications in the Trademark Trial and Appeal Board of the USPTO.

39.     In the Coke Applications, Coke claims that it commenced use of the VAULT Marks in commerce in the Spring of 2005.

40.     Upon information and belief, Coke registered the domain name www.drinkvault.com in January of 2006 and has operated a website advertising its VAULT product at that Internet address.

41.     Upon information and belief, Coke has launched multi-million dollar promotional campaigns for its VAULT product, which campaigns have saturated and are continuing to saturate the national market for the product.

42.     Upon information and belief, beverage products bearing Coke's infringing VAULT Marks are widely sold and advertised throughout the United States and in the Southeastern and Midwestern United States, often in the same retail locations where VOLT products have been sold and/or are being sold, and are generating many millions of dollars in sales.

43.     Upon information and belief, Coke did not use the VAULT Marks prior to its constructive first use dates of December 17, 2004, March 28, 2005 and March 31, 2005.

8

44. Coke's filing dates of December 17, 2004, March 28, 2005 and March 31, 2005 for Coke's VAULT Applications, and Coke's claimed first use date of May 2005, postdate by more than seven years HVB's constructive first use and priority date of July 23, 1997 for the VOLT Mark.

45. Coke's VAULT Marks are confusingly similar to HVB's VOLT Mark. The first and last two letters of each mark are the same, and the marks are pronounced very similarly.

46. Coke's VAULT Marks and HVB's VOLT Mark are used in connection with highly similar beverage products targeted to the same classes of consumers and the same retail trade channels, and are marketed and sold through the same trade channels and retail locations, such as convenience stores and general merchandise retailers, where the products often will be placed in close proximity.

47. Consumers of VAULT and VOLT branded products, which are relatively inexpensive items sold in the context of convenience stores and similar outlets, are unlikely to exercise particular care in selecting and purchasing those products and are thus vulnerable to confusion about the source or origin of those products or affiliations between those products or the companies that produce and sell them.

48. On information and belief, Coke adopted and has used the VAULT Marks in bad faith, with actual or constructive knowledge and/or reckless disregard of and indifference to HVB's rights in and to its federally registered VOLT trademark.

49. Coke's use of its confusingly similar VAULT Marks for goods highly similar to those marketed under HVB's VOLT Mark is likely to cause and is causing confusion, mistake and deception among the general purchasing public and the trade about whether the parties or

9

their products designated by these two marks are the same or are somehow authorized, sponsored, or approved by or associated or affiliated with each other.

50. Coke's use of its VAULT Marks is likely to cause confusion as to the source and origin of its products and is likely to cause confusion, or to cause mistake, or to deceive the public and the trade as to the source or sponsorship of those products and to mislead the public into believing that such products emanate from, are approved or sponsored by, or are in some way associated or connected with HVB.

51. Additionally, because of Coke's disproportionately larger size, advertising budget and resources, Coke's use of the VAULT Marks is likely to cause reverse confusion, mistake, and/or deception among the public and the trade, who will believe that HVB or its VOLT products emanate from, are approved or sponsored by, or are in some way associated or connected with Coke or its products or that HVB has inferior rights to Coke and is seeking to free-ride upon Coke's reputation and superior resources.

52. Additionally, because of Coke's disproportionately larger size, advertising budget and resources, Coke's use of the VAULT Marks has and will continue to overwhelm and swamp HVB's use of its VOLT Mark, to cause HVB to lose the value of and goodwill inherent in the VOLT Mark, and to hinder HVB's ability to move into additional markets and/or further to exploit those markets in which it already conducts commerce.

53. Coke's use of the trademark VAULT for its beverage products has created actual confusion and deception regarding the parties and their respective VOLT and VAULT Marks.

54. Coke's conduct has harmed and will continue to harm HVB's reputation and goodwill, and has caused the loss of sales and profits which HVB and/or its predecessor BNM would have made but for Coke's unlawful acts.

10

55.     Coke's infringement of HVB's trademark rights is causing HVB immediate and irreparable harm and will continue to do so unless enjoined by this Court.

## TRADEMARK INFRINGEMENT
### (Lanham Act § 32, 15 U.S.C. § 1114)

56.     HVB repeats and realleges each of the allegations set forth in paragraphs 1 through 55 above  as if fully set forth herein.

57.     Coke's activities as described above constitute infringement of a registered mark in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

58.     As a direct and proximate result of Coke's trademark infringement, Coke has derived unlawful gains, profited, benefited, and been otherwise unjustly enriched in the marketplace, at the expense of and injury to HVB.

59.     HVB has no adequate remedy at law.

**WHEREFORE,** HVB prays that the Court enter judgment in its favor and against Coke as follows:

i.     That Coke, its officers, agents, servants, employees and attorneys, and all those persons or entities in active concert or participation with any of them who receive actual notice of the injunctive order, be enjoined, preliminarily and permanently from (a) selling, offering for sale, advertising, promoting, distributing, marketing, or exploiting in any other way the VAULT Marks or any other mark confusingly similar to HVB's VOLT Mark in connection with beverage products or related goods or services; and (b) committing any other act calculated or likely to cause the public to believe that Coke and HVB are in any manner connected, affiliated or associated with one another or otherwise competing unfairly with HVB;

11

ii.     Pursuant to 15 U.S.C. § 1116(a), that Coke be directed to file with the Court and serve upon HVB, within thirty (30) days after entry of final judgment, a report in writing and under oath setting forth in detail the manner and form by which it has complied with the provisions set forth in paragraph i above;

iii.    That Coke be ordered to undertake or to compensate HVB for the cost of corrective advertising and other corrective measures reasonably calculated to attempt to mitigate the confusion engendered by Coke's infringing conduct;

iv.     That this Court order that Coke transfer to HVB the www.drinkvault.com domain name and any other domain name incorporating elements confusingly similar to HVB's VOLT Mark or the www.drinkvolt.com domain name;

v.      Pursuant to 15 U.S.C. § 1118, that Coke destroy all labels, signs, prints, packages, wrappers, receptacles, and advertisements that bear the VAULT Marks, and all means of making the same;

vi.     Pursuant to 15 U.S.C. § 1117(a), that Coke be directed to account to HVB for all gains, profits and advantages derived from Coke's wrongful acts;

vii.    Pursuant to 15 U.S.C. § 1117(a), that HVB recover from Coke its profits and any damages sustained by HVB and/or its predecessor BNM by reason of Coke's infringing activities, trebled as allowed by law, together with interest on such amount and the costs of this action;

viii.   Pursuant to 15 U.S.C. § 1117(a), that HVB recover from Coke its attorneys' fees and the costs of this action; and

ix.    That Plaintiff have such other and further relief as the Court deems equitable, just and

proper.

**JURY TRIAL DEMANDED**

Respectfully submitted this 12th day of August, 2008.

/s/ John S. Buford_____
James T. Williams, Jr.
N.C. Bar No. 4758
jwilliams@brookspierce.com
Jennifer K. Van Zant
N.C. Bar No. 21280
jvanzant@brookspierce.com
John S. Buford
N.C. Bar No. 28455
jbuford@brookspierce.com
BROOKS, PIERCE, McLENDON,
  HUMPHREY & LEONARD, L.L.P.
P.O. Box 26000
Greensboro, NC 27420
Telephone: (336) 373-8850
Fax: (336) 378-1001
*Attorneys for Plaintiff High Voltage*
*Beverages, LLC*


OF COUNSEL:

Jonathan Z. King
Richard S. Mandel
COWAN, LIEBOWITZ & LATMAN, P.C.
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 790-9200
Fax: (212) 575-0671