# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:08cv367

| | |
|---|---|
| **HIGH VOLTAGE BEVERAGES, LLC,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | **ORDER** |
| ) | |
| **THE COCA-COLA COMPANY,** ) | |
| ) | |
| Defendant and Counter ) | |
| Claimant, ) | |
| ) | |
| Vs. ) | |
| ) | |
| **HIGH VOLTAGE BEVERAGES, LLC,** ) | |
| ) | |
| Counter Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the court on plaintiff's and counter defendant's Motion to Reconsider Order Staying Case (#122). A Response, a Supplement, a Reply, and a Reply to the supplement have all been filed within the time provided by this court. In all, it appears that more than 1500 pages of materials have been submitted on this particular motion.

First, it appears that the bankruptcy of JOLT has been dismissed and that JOLT's request for a 90 day extension in the TTAB proceeding has been withdrawn

-1-

and replaced with a request for a 30 day extension. Thus, the court finds no basis to reconsider its earlier decision on the basis of a proceeding that has been withdrawn. While plaintiff argues that such bankruptcy filing shows the volatility of JOLT and the uncertainty of the TTAB action proceeding in an orderly and expeditious fashion, such argument is little more than speculation. There has also been a great deal of speculation in the pleadings as to defendant conspiring with JOLT to cause the TTAB action to be filed and plaintiff being a suitor for JOLT in the bankruptcy proceeding. These contentions are simply not helpful.

Putting aside the abortive Chapter 11 filed by JOLT, the undersigned agrees with defendant that plaintiff has come forward with no new factual or procedural developments that warrant reconsidering the stay. Further, it appears that much of the material presented as new or newly discovered is not in fact new, but was within the possession, custody, or control of plaintiff and its predecessors in interest. In considering motions for reconsideration, the Court of Appeals for the Fourth Circuit has provided this court with very specific guidance:

> Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment. See 12 Moore's Federal Practice § 60.23 ("Rule 60(b) does not govern relief from interlocutory orders...."). This is because a district court retains the power to reconsider and modify its interlocutory judgments . . . at any time prior to final judgment when such is warranted. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936

F.2d 1462, 1469 (4th Cir.1991) ("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment."); *cf.* Fed.R.Civ.P. 54(b) (providing that interlocutory orders that resolve fewer than all claims are "subject to revision at any time before the entry of [final] judgment"). Said power is committed to the discretion of the district court, *see Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"), and doctrines such as law of the case, which is what the district court apparently relied on in this case, have evolved as a means of guiding that discretion, *see Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir.1988) (noting that earlier decisions of a court become law of the case and must be followed unless "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." (internal quotation marks omitted)).

Law of the case is just that however, it does not and cannot limit the power of a court to reconsider an earlier ruling. The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law.

<u>American Canoe Ass'n v. Murphy Farms, Inc.</u>, 326 F.3d 505, 514-515 (4th Cir. 2003).

In seeking the correct decision, the court has reviewed all of the material and has turned to plaintiff's strongest argument, which is that it will be irreparably harmed by continuation of the stay. Arguments such as this concern the court. Plaintiff contends that it owns a valuable trademark, that it is suffering from real confusion in the marketplace, and that the harm to its brand cannot be remedied through money damages. <u>See</u> Reply (Docket Entry #131). Plaintiff has pointed to consumer surveys it has commissioned and results showing consumer confusion

between the VAULT and VOLT brands. Id. The court agrees with plaintiff's statement of the law that a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion. Scotts Co. v. United Industries Corp., 315 F.3d 264, 273 (4th Cir.2002). Further, under 15 U.S.C. § 1116, a trial court has the explicit authority to make a preliminary injunction permanent. Id. Plaintiff's argument of irreparable harm begs the question of why, in face of such great harm to its brand, plaintiff did not file a motion for a temporary restraining order or a preliminary injunction in the more-than-a-year that this action has been pending. While the timing of the consumer survey may speak as to why this issue is brought up now, this argument carries little weight on reconsideration as plaintiff well-knew of the alleged harm to its brand caused by confusion when this action was filed and did not seek a preliminary injunction. Indeed, plaintiff alleged in its original Complaint, as follows:

> 47. Consumers of VAULT and VOLT branded products, which are relatively inexpensive items sold in the context of convenience stores and similar outlets, are unlikely to exercise particular care in selecting and purchasing those products and are thus vulnerable to confusion about the source or origin of those products or affiliations between those products or the companies that produce and sell them.
> * * *
> 49. Coke's use of its confusingly similar VAULT Marks for goods highly similar to those marketed under HVB's VOLT Mark is likely to cause and is causing confusion, mistake and deception

>
> among the general purchasing public and the trade about whether the parties or their products designated by these two marks are the same or are somehow authorized, sponsored, or approved by or associated or affiliated with each other.
>
> 50. Coke's use of its VAULT Marks is likely to cause confusion as to the source and origin of its products and is likely to cause confusion, or to cause mistake, or to deceive the public and the trade as to the source or sponsorship of those products and to mislead the public into believing that such products emanate from, are approved or sponsored by, or are in some way associated or connected with HVB.

Original Complaint, at ¶¶ 47, 49-50 (filed 8/12/2008).[1] Plaintiff's argument as to confusion provides nothing new. As discussed in the court's Order staying this matter in favor of the TTAB action, whether plaintiff's VOLT mark will continue to be a "valuable" mark is put into serious question by the TTAB proceeding as plaintiff herein may have no colorable claim against defendant's common law priority rights in VAULT based on the result of that proceeding.

The court has also considered the additional arguments and materials presented by plaintiff as to judicial economy. There is little that is new in this argument. What is readily apparent, however, is the difference between plaintiff's view of judicial economy and the court's view, which are miles apart. The court has before it well over 1000 pages of material submitted by plaintiff as to the Motion to Reconsider

---

[1] *C.f.* Amended Complaint, Docket Entry #35, at ¶¶ 47, 49-50 (filed 1/13/2009), wherein plaintiff has asserted identical allegations as to confusion.

alone. Had this case been approached differently, perhaps plaintiff's invocation of judicial economy would carry greater weight. The writing is on the wall for this case, however, which is that these parties have not and are not likely to cooperate in moving this case along and that a great deal of judicial intervention will be required. Also striking in the context of a judicial economy argument that is accompanied by such massive submission is the amount of judicial time it takes to review a 1000-page submission. Each district and magistrate judge is assigned well over 300 cases in this district, which means the court's limited resources cannot be devoted only to one case. ECF has not helped matters as it has given litigants an inexpensive and easy way to file unlimited exhibits. While the court has not received an additional set of judicial hands in Asheville since 1989, the Bar and the caseload has grown exponentially. Where, as here, another unquestionably qualified tribunal has before it an issue which could result in saving this court hundreds of hours, judicial economy mandates close consideration of a stay. Plaintiff simply has not shown any reason why judicial economy now favors dissolving the stay or why the previous decision of this court was incorrect. If anything, the pleadings now before the court simply reinforce the previous determination.

Finally, the court has received and considered plaintiff's Notice Concerning Suspension of TTAB Proceeding (#136), which was filed November 19, 2009. The

court greatly appreciates such filing, which may well indicate that the stay in this action will be short-lived.  While the court is not in a position to monitor the daily proceedings of the TTAB, it is most important that the court be informed in the event the TTAB proceedings are terminated.  If that were to occur, the stay in this matter would automatically dissolve regardless of an appeal or any motion to reconsider any such termination.  The court will so modify the stay entered herein to reflect such triggering event.

**ORDER**

**IT IS, THEREFORE, ORDERED** that plaintiff's and counter defendant's Motion to Reconsider Order Staying Case (#122) is **GRANTED** and, having reconsidered such earlier decision and having determined that a basis for amending such determination or for dissolving the stay has not been shown, the relief requested by plaintiff is respectfully **DENIED**.  The stay is **MODIFIED** to provide that the stay shall automatically dissolve in the event the TTAB proceeding is terminated regardless of any appeal or any motion filed in that proceeding for reconsideration.

The parties are respectfully advised that they have 14 days from entry of this Order to serve and file objections to this Order with the district court in accordance

with Rule 72(a). As allowed by previous Order, the parties shall have 14 days from entry of this Order to file and serve objections with the district court as to the previous Order imposing the stay.[2]

Signed: December 8, 2009

Dennis L. Howell
United States Magistrate Judge

---

[2] The court would greatly appreciate that any objections concerning either Order be consolidated into a single pleading so as to aid the district court in its review.