IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08CV367

| | |
|---|---|
| HIGH VOLTAGE BEVERAGES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| THE COCA-COLA COMPANY, ) | ORDER |
| ) | |
| Defendant and Counter Claimant, ) | |
| ) | |
| vs. ) | |
| ) | |
| BRAND NAME MANAGEMENT, INC., and ) | |
| OWEN RYAN, ) | |
| ) | |
| Counter Defendants. ) | |
| _____) | |

This matter is before the court upon the memorandum and recommendation ("M&R") of United States Magistrate Dennis L. Howell, filed December 16, 2010. (Docket # 240). The parties were advised that pursuant to 28 U.S.C. § 636(b)(1)(C), written objections to the M&R must be filed within 14 days after service of the memorandum and responses to the objections must be filed within fourteen days thereafter. Both parties timely filed both objections to the M&R and responses to the objections. The court has conducted an independent and thorough review of the magistrate's M&R, each parties' objections thereto, and a de novo review of the record. The court will address each of the magistrate's findings and conclusions on the cross-motions for summary judgment, as well as each party's objections, in the order in which they appear in the M&R.

Defendant and Counter Claimant The Coca Cola Company ("TCCC") moved for

1

summary judgment as to its Third Counterclaim seeking cancellation of the VOLT mark upon three grounds: (1) Brand Name Management, Inc. ("BNM/NY") lacked a bona fide intent to use the VOLT mark when it filed its "intent to use" ("ITU") application in 1997; (2) that the application was abandoned in 2001 when BNM/NY, a defunct corporation, failed to timely respond to the United States Patent and Trademark Office's ("PTO") notice of office action; and (3) that the application was again abandoned in 2006 when the applicant failed to file a timely Statement of Use ("SOU"). The magistrate judge recommended denying summary judgment in favor of TCCC as to its lack of bona fide intent argument. This court concludes that the magistrate's findings and conclusions as to this issue are correct and in accordance with law.

While TCCC argues strenuously that Counter Defendants lack sufficient documentary evidence to support bona fide intent, the court finds that these arguments are without merit. The Counter Defendants have produced more than sufficient evidence to avoid summary judgment in TCCC's favor. Not only have they produced documentary evidence in the form of prototype labels and logos prepared by Owen Ryan, but also Ryan's testimony as to his efforts to develop the brand, including industry research and consumer testing, and his experience in the beverage industry. Moreover, the issue of bona fide intent is not readily susceptible to summary disposition. *See Telos Corp. v. Telestrategies*, 2005 TTAB LEXIS 53, at *6 (TTAB Feb. 9, 2005). The three cases cited by TCCC in which summary judgment was granted on the issue of lack of bona fide intent are all easily distinguishable from this case, as they involved applicants either acting in bad faith to preempt another's mark, or applicants having no evidence of any kind of bona fide intent. In addition, this is a case in which the mark is actually in commercial use, which is evidence of bona fide intent to use. Accordingly, the court finds that the issue of bona fide intent is properly left to the jury.

TCCC contends in its objections to the M&R that the magistrate overlooked other evidence and arguments TCCC offered that prove a lack of bona fide intent to use the VOLT mark, such as Ryan's trademark filing history.  All of these arguments could undoubtedly serve as jury arguments, but simply do not suffice to grant summary judgment in favor of TCCC on the issue of bona fide intent.

TCCC also argued that it is entitled to summary judgment on its cancellation counterclaim because the application was abandoned in 2001.  The magistrate correctly rejected this argument, and TCCC has not objected to the magistrate's findings in this regard.

TCCC's next objection is to the magistrate's conclusion that the VOLT ITU application was not abandoned in 2006.  TCCC argues that BNM/NY was the entity that filed the Statement of Use ("SOU") on November 14, 2006, since the SOU listed a New York address.[1]  It is undisputed that Brand Name Management, Inc. ("BNM"), the Delaware corporation, was the owner of the VOLT application when the SOU was filed.  BNM/NY was merged into BNM, a Delaware corporation with the same name, on October 24, 2006.  Pursuant to the merger, BNM was the surviving corporation, succeeding to all rights, duties, powers, officers, policies and charters of BNM/NY.   TCCC claims that the VOLT application was statutorily abandoned when BNM/NY erroneously filed the SOU when it was no longer the owner of the application.  However, the court finds that the magistrate judge correctly concluded that it would have been a "legal impossibility for BNM/NY to file the SOU on November 14, 2006, because on that date, BNM/NY no longer existed, having merged on October 24, 2006 into BNM."  (M&R at 18-19).

---

[1] The NY address was apparently inserted electronically by the USPTO website's SOU form.  The SOU listed the name of the legal owner of the application as "Brand Name Management, Inc."

3

Thus, the SOU was filed by the true owner of the ITU application. The magistrate was correct in denying summary judgment in favor of TCCC on the basis of its argument of abandonment in 2006.

There is yet another reason why summary judgment in favor of TCCC on its claims of abandonment is not appropriate. Abandonment, as a matter of law, cannot apply to events during the time the ITU was pending. The court discusses its reasoning below in the context of HVB's motion for summary judgment as to TCCC's affirmative defense of abandonment.

TCCC also moved for summary judgment as to HVB's claim of trademark infringement, contending that VOLT's alleged priority over VAULT rests solely on an invalid mark. The magistrate judge denied summary judgment on this claim, finding that it was contingent upon the court granting summary judgment on TCCC's counterclaim seeking cancellation. TCCC has objected to this finding, arguing that the M&R erred by denying summary judgment in favor of TCCC on its cancellation counterclaim. As the court is affirming the denial of summary judgment as to the cancellation counterclaim for the reasons described above, the court likewise affirms the denial of summary judgment as to this claim.

TCCC next moved for summary judgment on its Second Counterclaim of false procurement of the VOLT mark. In support of its motion, TCCC again argued that BNM/NY lacked a bona fide intent to use the mark and falsely stated in the SOU that it was the owner of the mark. For the reasons discussed above, as well as later in this Order, the court finds that the magistrate's recommendation to deny summary judgment in favor of TCCC on this counterclaim is correct.

The only claim on which the magistrate recommended granting summary judgment in favor of TCCC is HVB's trademark infringement claims against VAULT RED BLITZ and

VAULT ZERO. The M&R cited HVB's failure to meet its burden of coming forward with some evidence upon which the court could conduct a likelihood-of-confusion analysis between the marks. [2] The magistrate correctly pointed out that there is no evidence of actual or likely confusion concerning VAULT RED BLITZ and VAULT ZERO other than what can be garnered from looking at photographs of the products. The court agrees with the magistrate's conclusions and finds that summary judgment in favor of TCCC is warranted on this claim.

The M&R next addresses HVB, BNM and Ryan's motion for summary judgment on TCCC's affirmative defenses of laches, acquiescence,[3] abandonment, and fraudulent procurement. When asserting a defense of laches to a claim for monetary relief, a defendant must present evidence that the plaintiff unreasonably delayed challenging the infringement and that such delay resulted in undue prejudice to the defendant. *What-A-Burger of Va., Inc. v. Whataburger, Inc.*, 357 F.3d 441, 448-49 (4th Cir. 2004). In this case it is undisputed that Ryan knew of the alleged infringing use of the VAULT mark in June 2005 and failed to send a cease and desist letter to TCCC, and that TCCC spent millions promoting the VAULT brand from 2005 to 2008. It is likewise undisputed that the Plaintiff brought this suit within the four year limitations period, which creates a presumption that laches is inapplicable. *See Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001). The magistrate found that the

---

[2] The Fourth Circuit has held that determining likelihood-of-confusion requires consideration of the following: (1) the strength or distinctiveness of the marks; (2) the similarity of the marks; (3) the similarity of the goods and services the marks identify; (4) the similarity of the facilities the parties use in their businesses; (5) the similarity of advertising used by the parties; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public. *George & Co. v. Imagination Entm't Ltd.*, 575 F.3d 383, 393-94 (4th Cir. 2009).

[3] TCCC has now abandoned its acquiescence defense.

date from which to adjudge laches is the date on which the applicant becomes aware of the purportedly infringing use. The magistrate recommended denial of the motion for summary judgment, finding that TCCC has come forward with evidence which, considered in the light most favorable to TCCC, rebuts the presumption that laches is unavailable where an action is brought within the period of limitations.

Citing the Fourth Circuit case of *What-A-Burger of Va., Inc. v. Whataburger, Inc.*, the Plaintiff argues that the magistrate erred in finding the applicable laches date is the date when the trademark owner initially discovers the use of a similar mark. Plaintiff contends that the proper date for assessing delay for laches is the date the trademark owner obtained the cognizable right to sue. Indeed, the Fourth Circuit stated that "[l]ogic dictates that 'unreasonable delay' does not include any period of time before the owner is able to pursue a claim for infringement - otherwise, a trademark owner could be punished for not bringing a claim he had no right to bring." *What-A-Burger*, 357 F.3d at 449. This is true "regardless of when the trademark owner initially discovers use of a similar mark." *Id.* A trademark owner's "mere knowledge that he might have an infringement claim at some future date is not sufficient to trigger the period of unreasonable delay required for estoppel by laches." *Id.* at 450.

In this case, BNM first acquired the statutory right to sue on April 17, 2007, when the VOLT ITU application matured into a registration. Prior to that date, BNM could not have sued TCCC for trademark infringement. There could be no infringement at that time, because BNM had not yet obtained the VOLT registration that would provide the priority necessary to state a claim for infringement. While TCCC claims that BNM could have perfected its rights far more quickly than the Lanham Act requires, there is no authority penalizing an ITU applicant for perfecting its trademark rights within the statutory schedule. Thus, the court is compelled to

follow Fourth Circuit precedent and hold that the date from which to determine laches is no earlier than April 17, 2007. Accordingly, the period of delay for laches purposes is at most 16 months, well within the applicable limitations period of four years for infringement claims. The court finds that as a matter of law, this short period of time cannot be considered "unreasonable" delay. *See Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 603 F.3d 1133, 1140 (9th Cir. 2009) (court granted summary judgment as to laches defense when 27 month delay was within the three year limitations period); *Perini Corp. v. Perini Constr., Inc.*, 715 F. Supp. 719, 724 (D.Md. 1989) (two year delay in bringing suit found not unreasonable as a matter of law), *rev'd on other grounds*, 915 F.2d 121 (4th Cir. 1990). Accordingly, TCCC's affirmative defense of laches must fail.

The magistrate judge recommends denying HVB's motion for summary judgment on TCCC's affirmative defense of abandonment, stating that "TCCC has presented evidence upon which a jury could determine that the VOLT mark was abandoned (1) when BNM/NY lacked the corporate authority to engage in any new business while it was dissolved from 1998 to 2005, (2) when BNM/NY failed to timely respond to an office action in 2001, and (3) when the true owner failed to file a SOU by the statutory deadline in 2006." (M&R, p. 33). HVB objects to this finding, arguing first of all that the doctrine of abandonment cannot apply to events during pending ITU applications. Although HVB made this argument in its briefs as well as at the hearing, the M&R did not address this argument.

The TTAB has consistently held that the nonuse of a mark prior to the filing of a statement of use cannot constitute abandonment. *See Qualcomm, Inc. v. FLO Corp.*, 93 U.S.P.Q. 1768, 1770 (TTAB 2010) (abandonment not applicable to ITU application because use not required until statement of use filing)*; London Regional Transport v. The William A. Berdan &*

7

*Edward C. Goetz, III Partnership*, 2006 TTAB LEXIS 272, at *5 (TTAB June 20, 2006) ("nonuse of a mark prior to the filing of a statement of use cannot be used to make out a prima facie case of abandonment in an ITU application"); *Converse Inc. v. Worldwide Kids Associates, Ltd.*, 2004 TTAB LEXIS 247, *8 (TTAB April 29, 2004) (abandonment "inappropriate in the context of an opposition to registration of a mark in an [ITU] application because an [ITU] applicant is not required to use its mark until it files its amendment to allege use or statement of use."); *U.S. Olympic Comm. v. MEOB, Inc.*, 2003 TTAB LEXIS 496, *7-8 (TTAB Sept. 30, 2003) ("[a]ny period of nonuse of the mark which occurred prior to the filing of the statement of use is irrelevant to the abandonment determination."); *Consolidated Cigar Corp. v. Rodriguez*, 65 U.S.P.Q.2d 1153, 1155 (TTAB 2002) (no abandonment as a matter of law where nonuse occurred prior to the filing of the statement of use). TCCC fails to cite any caselaw applying abandonment to the period of time between the filing of the ITU application and the SOU.

    Citing *Imperial Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1582 (Fed.Cir. 1990), TCCC argues that the court should apply an "intent to begin use" test to determine whether a never-used mark in an ITU application has been abandoned. This court has found no caselaw to support TCCC's position. *Imperial Tobacco* involved the alleged abandonment of a registration issued to a foreign applicant under Section 44(e) of the Trademark Act. Under Section 44(e), the foreign applicant must declare a bona fide intent to use the mark in the United States, but the registration may issue without actual use. *Imperial Tobacco*, 899 F.2d at 1578, n. 3. A 44(e) registration may be cancelled on the ground of abandonment of the mark at any time. *Id.* at 1578-9. In contrast, an ITU application requires actual use of the mark in commerce as a prerequisite to the issuance of the registration. *Id.* at 1578, n.3. After the issuance of the registration, the mark is then subject to abandonment. Accordingly, the court holds that the

defense of abandonment cannot as a matter of law apply to the events preceding the issuance of the SOU. Moreover, the court notes that TCCC's arguments that dissolution of BNM/NY negates a bona fide intent to use the mark are better left to its claim for cancellation on the basis of lack of bona fide intent to use

HVB argues in the alternative that the M&R's rejection of TCCC's theories of abandonment precludes its contradictory conclusion that disputed issues of fact remain regarding those same theories. The magistrate denied TCCC's motion to cancel the VOLT registration on grounds of abandonment based upon allegedly defective administrative filings during the VOLT trademark application in 2001 and 2006. As stated above, this court has determined that the M&R is correct in rejecting TCCC's legal arguments as to these two grounds for abandonment. As these are purely legal issues already resolved in HVB's favor, there can be no issues left for a jury to decide.

In the M&R, the magistrate recommends denying HVB's motion for summary judgment as to TCCC's counterclaim and affirmative defense of fraudulent procurement because both pivot on whether BNM/NY had a bona fide intent to use the mark when it applied for the mark in 1997. While the court agrees that there are issues of fact as to bona fide intent, as noted earlier, the M&R did not address HVB's argument that TCCC's counterclaim should fail because TCCC has no proof of actual damages proximately caused by the allegedly fraudulently procured registration. It is undisputed that TCCC's damages consist only of attorneys' fees and costs incurred in defending this action. HVB argues that as a matter of law, such fees and costs are not cognizable in fraudulent procurement claims under 15 U.S.C. § 1120.

Section 38 of the Lanham Act, 15 U.S.C. § 1120, provides that a person who procures a trademark registration by fraud "shall be liable in a civil action by a person injured thereby for

9

any damages sustained in consequence thereof." In order to establish a claim for fraudulent procurement, TCCC must prove: (1) a false representation regarding a material fact; (2) knowledge or belief that the representation is false; (3) intent to induce action in reliance on the misrepresentation; (4) reasonable reliance on the misrepresentation; and (5) actual damages proximately resulting from that reliance. *United Phosphorous, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1226 (10th Cir. 2000).

HVB contends that TCCC has failed as a matter of law to establish the essential element of actual damages, since its damages consist only of attorney's fees and costs. The Lanham Act does provide for recovery of legal fees, but only in "exceptional cases." *See* 15 U.S.C. § 1117. Reading § 1120 to allow for attorney's fees as damages would circumvent § 1117. *See Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 876 (8th Cir. 1994) ("[i]f an award of fees were required by Section 38 [ for fraudulent procurement], that requirement would deprive courts of the discretion to award fees under Section 35, which discretion is limited to exceptional cases."); *3M Co. v. Intertape Polymer Group, Inc.*, 423 F.Supp. 2d 958, 966 (D.Minn. 2006) (§ 1120 damage claim cannot be used to "supplant" court's discretion to award fees only in 'exceptional cases'"). Indeed, virtually every modern court has held that, as a matter of law, attorneys' fees do not qualify as recoverable "damages" under Section 38 of the Lanham Act. *See, e.g.*, *United Phosphorous*, 205 F.3d at 1232 ("[Section] 1120 does not allow for the award of attorney fees."); *Aromatique*, 28 F.3d at 876; *Exxon Corp. v. Exxene Corp.*, 696 F.2d 544, 551 (7th Cir. 1982); *Zobmondo Entm't, LLC v. Falls Media, LLC,* 2008 U.S. Dist. LEXIS 108409, *28-29 (C.D. Cal. Aug. 11, 2008), *rev'd on other grounds*, 602 F.3d 1108 (9th Cir. 2010); *3M Co.*, 423 F.Supp. 2d at 966; *The Conard-Pyle Co. v. Thuron Indus., Inc.*, 201 U.S.P.Q. 733, 740 (N.D.Tex. 1978) ("There is no authority for attorney's fees under 15 U.S.C. § 1120."). The court finds the

10

reasoning in these cases persuasive. With only fees as a basis for damages, the court finds that TCCC has failed as a matter of law to establish an essential element of its claim.

The court has reviewed the magistrate's findings and conclusions with regard to TCCC's counterclaim for champerty and maintenance, along with the briefs and submissions of the parties, the objection and response of the parties, and the transcript of the hearing. HVB again agues that TCCC lacks standing to bring this counterclaim. This court has previously rejected this argument and does so once again.[4] The court is also in agreement with the magistrate that TCCC has presented evidence upon which a jury could find that HVB is a stranger to this lawsuit because it did not have a pre-existing interest in this lawsuit distinct from the interest it acquired from BNM, the "maintained party" on the eve of filing this lawsuit. Moreover, the magistrate's reliance on *Smith v. Hartsell*, 63 S.E. 172 (N.C. 1908), *Oliver v. Bynum*, 592 S.E.2d 707 (N.C. Ct. App. 2004) and *Odell v. Legal Bucks*, *LLC,* 192 N.C.App. 298 (2008) is correct. The key factor in determining whether HVB was "stirring up strife and continuing litigation" for purposes of champerty is whether HVB exercises "control over the claim." TCCC has presented evidence sufficient to create a genuine issue of material fact as to whether HVB provided funding "for the purpose of stirring up strife and continuing litigation." The court also finds that the M&R properly recognized that damages are not an element of champerty and maintenance in North Carolina.

IT IS THEREFORE ORDERED that the M&R is affirmed in part and rejected in part as follows:

(1) TCCC's Motion for Partial Summary Judgment is hereby DENIED except as to

---

[4] *See* Docket # 188 at f.n. 3.

HVB's trademark infringement claims against VAULT RED BLITZ and VAULT ZERO; and

(2) Plaintiff and Counter Defendants' Motion for Summary Judgment is hereby GRANTED as to TCCC's counterclaim and affirmative defense of fraudulent procurement, as well as TCCC's affirmative defenses of laches, acquiescence, and abandonment. Summary Judgment is DENIED as to TCCC's counterclaim of champerty and maintenance.

Signed: March 3, 2011

Graham C. Mullen
United States District Judge